UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| CURTIS LEWIS JONES, #221006, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-505 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| AMY BRADLEY, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. The event giving rise to this lawsuit is an August 2009 major misconduct charge against plaintiff for disobeying a direct order while he was an inmate at the Carson City Correctional Facility (DRF). On September 29, 2009, a hearing officer found plaintiff guilty of the major misconduct, and plaintiff's conviction has never been overturned.

The defendants are: (1) Food Service Leader Amy Bradley; (2) Food Service Leader Darren Burgtorf; and (3) Hearing Investigator Joe VanCourt. Plaintiff alleges that defendant Bradley violated his First Amendment rights by filing the misconduct charge. He alleges that defendant Burgtorf violated his First Amendment rights by giving him an unfavorable work evaluation. Plaintiff alleges that defendant VanCourt violated his rights under the Fourteenth Amendment's Due Process Clause by conducting an inadequate investigation of the misconduct charge.[1] Plaintiff sues defendants in their individual and official capacities. He seeks an award of damages and declaratory and injunctive relief.

_____

[1]All other claims were dismissed on July 1, 2010. (7/1/10 Order, docket # 6).

The matter is now before the court on defendants' motion for summary judgment. (docket # 12).  Plaintiff has filed his response (docket # 21), and the matter is ready for decision. For the reasons set forth herein, I recommend that plaintiff's clams for injunctive and declaratory relief be dismissed as moot, and that his claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that defendants' motion for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Kizer v. Shelby County Gov't*, 649 F.3d 462, 466 (6th Cir. 2011).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  The court must draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, No. 10-1050, __ F.3d __, 2011 WL 4634215, at * 5 (6th Cir. Oct. 7, 2011). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

### Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff is currently incarcerated at the Ryan Correctional Facility (RRF). (docket # 33). All the crimes forming the basis of plaintiff's present incarceration occurred after April 1, 1987.[2] In 1990, plaintiff committed a second-degree murder, a felony firearm offense, and attempted delivery or manufacture of a controlled substance

---

[2]Prison major misconduct convictions generally result in the loss of good time credits for prisoners who committed their crimes before April 1, 1987. Prisoners committing crimes after April 1, 1987 fall under Michigan's disciplinary credits system. A prisoner's loss of disciplinary credits does not implicate a protected liberty interest, as it does not extend his term of incarceration. *See Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009); *Langford v. McKee*, No. 1:11-cv-5, 2011 WL 2728397, at * 5 (W.D. Mich. July 12, 2011); *accord Thomas v. Eby*, 481 F.3d 434, 439-40 (6th Cir. 2007).

in violation of Michigan laws.  He was sentenced to life imprisonment on his murder conviction and

two years' imprisonment on each of the other convictions.  In 2004, plaintiff was found guilty of

being a prisoner in possession of contraband and was sentenced to an additional 1-to-5 years'

imprisonment.  Plaintiff was an inmate at the Carson City Correctional Facility (DRF) on August

12, 2009, the date his major misconduct giving rise to this lawsuit occurred.

Plaintiff was assigned to a food service job at DRF.  He often arrived late for his work

assignment and frequently strayed away from his assigned work area in order to visit with other

prisoners.  Plaintiff received numerous verbal warnings, but they did not result in improved work

performance.  (Burgtorf Aff. ¶¶ 5, 6, 3/17/09 Work Performance Warning, and 4/1/09 Work

Assignment Evaluation, docket # 19, ID#s 166-67, 170–71).  On August 5, 2009, Food Service

Leader Burgtorf commented in plaintiff's performance review that he had a hard time getting to work

on time and that he had to be told to return to his work area.  (08/05/09 Work Assignment Evaluation

and Burgtorf Aff ¶¶  4-7, ID#s 166-67, 169).

On August 12, 2009, Food Service Leader Amy Bradley found plaintiff in the food

service commissary.  Plaintiff was visiting with other prisoners in the commissary rather than

attending to his job assignment, which was in a different food service area.  (Bradley Aff. ¶ 4, docket

# 16).  Plaintiff had been warned not to hang out in the commissary.  (Bendt Aff. ¶ 7, docket # 17).

Food Service Leader Bradley ordered plaintiff to get back to his food assignment.  (Bendt Aff. ¶ 8).

According to plaintiff, Ms. Bradley addressed him in a loud voice and stated: "It's 12:45 and I want

your ass doing your f___ing job.  So get your ass in your work area right now, and I don't want to

hear your mouth."  (Plf. Aff. at 1-2, docket # 22).  Plaintiff did not follow Bradley's order.  Instead,

he "stepped up to" Ms. Bradley and became loud and argumentative.  (Bendt Aff. ¶¶ 8, 9; Bradley

Aff. ¶ 4). He was angry with Bradley for confronting him. (Bendt Aff. ¶ 9). Plaintiff indicated that

he was a "soldier"and that Ms. Bradley could not talk to him like that. The soldier reference was a

reference to plaintiff's station or rank in his gang. (Bendt Aff. ¶ 9; Bradley Aff. ¶ 4). Plaintiff

characterizes his comments as "inform[ing] Amy Bradley not to swear at [him] nor to talk to [him]

like that in front of anyone." (Plf. Aff. at 2). Plaintiff states that he threatened to file a grievance

against Bradley for her unprofessional conduct. (*Id.*). Corrections Officer Bendt stepped between

Prisoner Jones and Food Service Leader Bradley. He then walked plaintiff out of the room, out of

the building, and back to his housing unit. (Bendt Aff. ¶ 10).

On August 13, 2009, Food Service Leader Bradley issued a major misconduct charge

against plaintiff for violating her direct order.

> At 12:48 hrs. I observed Jones 221006 in the food service commissary. He was visiting with prisoners who are assigned to this area. Jones is assigned to produce which is located in another part of food service. Jones had no authorization to be in the commissary and I told him to leave the area and get on his assignment. Jones became loud and argumentative. I repeated the order and even reminded Jones that his produce detail started at 1230. Jones did not leave the commissary nor did he report to his produce assignment as directed. ID by ID card and daily contact.

(docket # 16, ID# 154; Bradley Aff. ¶¶ 4, 5). Bradley states that plaintiff never threatened to file a

grievance during their encounter, and regardless of what plaintiff said, she would have issued the

misconduct charge because plaintiff had disobeyed her direct order. (Bradley Aff. ¶ 6).

On August 14, 2009, Classification Director Beecher placed plaintiff on a 30-day

conditional rating to improve attendance and job performance. (docket # 19, ID# 169). Plaintiff was

temporarily placed on "lay-in" status from his work assignment because the major misconduct

charge was pending. (8/14/09 Notice, docket # 13-5, ID# 106; Burgtorf Aff. ¶ 7).

-5-

On August 14, 2009, plaintiff refused to attend his misconduct review.  He did not request that any evidence be obtained on his behalf.  A reviewing officer assigned the matter to Investigator Joe VanCourt.  (VanCourt Aff. ¶ 3, docket # 18).  VanCourt's job duties include gathering witness statements and other evidence necessary for a hearing on misconduct charges.  (VanCourt Aff. ¶ 1).  On August 14, 2009, VanCourt interviewed plaintiff.  Plaintiff refused to utilize the hearings investigators' office except to have questions submitted to Officer Bendt and Prisoner Wyatt.  (VanCourt Aff. ¶ 4, docket # 18).  Plaintiff did not request video evidence.  Plaintiff gave Investigator VanCourt a written statement informing VanCourt that he would be addressing the hearing officer himself and did not require anything further from the investigator.  (VanCourt Aff. ¶ 5).  When VanCourt received the statements from  Bendt and Wyatt, he scheduled the matter for a hearing.  (VanCourt Aff. ¶ 6).

On August 18, 2009, DRF's grievance coordinator received plaintiff's grievance and and assigned it Grievance No. DRF0908004017F.  (docket # 22-1, ID# 201).  Plaintiff's grievance, is set forth verbatim below:

> This Grievance is being wrote on FoodSupervisor Amy Bradley 1076683 whom in her official capacity used unprofessional Language and Conduct to Demean, Belittle and Harass Inmate Jones # 221006.  On Wednesday, August 12th, 2009, as part of my job, I received permission from FoodService Officer Bendt to retrieve Coleslaw dressing from the Commissary Room.  At Approx. 12:45 p.m. Amy Bradley opened the Commissary Room door and in a loud voice stated (Quote on Quote): "It's 12:45 p.m. and i want your ass doing your f___ing job, So get your ass in your work area right now, and I don't want to hear your mouth." (End Quote).  This was done in front of Officer Bendt, and commissary workers Wyatt #289101 & Gavin.  Her INSOLENCE behavior was intended to harass, degrade or cause alarm in inmate Jones.  I have suffered mental distress and emotional distress.  Her conduct is reckless, negligent, extreme and outrageous.  I would like her investigated and I ask Foodservice Director Pat Williams to take into consideration all complaints, past grievances, etc. etc. that have been filed against her.  Inmate Jones fears RETALIATION from Bradley -- such that may result in me losing my Kitchen Job Because of this Grievance.

> Bradley has a History of Filing bad 363 Work Assignment evaluations claiming inmates to be a threat to Security & Order of Kitchen to have them removed from detail.

(docket # 22-1, ID# 201).

Plaintiff's hearing on the major misconduct charge began on September 3, 2009. The hearing officer adjourned the hearing and instructed Investigator VanCourt to interview Food Service Director Koenigsknecht and determine whether he was present during the incident. (VanCourt Aff. ¶ 8). On September 9, 20009, Koenigsknecht provided a written response indicating that he had not been present in the commissary during the incident. Keonigsknecht did hear and see an argument outside his office. Koenigsknecht came out of his office and told plaintiff to stop yelling and pointing at Ms. Bradley. (docket # 18, ID# 164, docket # 22-3, ID# 211). VanCourt forwarded Koenigsknecht's statement to the hearing officer. (VanCourt Aff. ¶ 9).

Plaintiff's hearing continued on September 18, 2009. Plaintiff asked the hearing officer to review video footage of the incident purportedly recorded by a camera facing away from the commissary and down the hall towards the assistant food service director's office. Plaintiff argued that VanCourt's statement that there was no camera in the commissary was misleading because it failed to take the hallway camera into account. Plaintiff asked that VanCourt be removed from the investigation because he and Bradley were friends. (Plf. Aff. at 4-5; Response to Major Misconduct Ticket, docket # 22-2, ID#s 208-09). Plaintiff claimed that Lieutenant T. Kapusta had camera footage of the incident. The hearing examiner adjourned the hearing. (VanCourt Aff. ¶ 10). Lieutenant Kapusta responded that he could not review the purported video footage of the August 12, 2009 incident because it was not on DRF's computer system. (docket # 18, ID# 164).

The hearing continued on September 29, 2009, and on that date, the hearing officer found plaintiff guilty of the major misconduct charge:

> I find that F/S Bradley told Prisoner to leave the commissary. I find prisoner did not immediately leave the commissary but stopped to argue with F/S Bradley until Officer Bendt stepped between them and escorted Prisoner from the food service building. I find prisoner did not immediately leave the commissary as he was instructed to do. I find that this order was valid and reasonable in that the prisoner was physically able to comply and faced no significant risk of serious harm in doing so. I find Prisoner guilty of Disobeying a Direct Order.
>
> I find the statement of F/S Bradley to be credible in that it gives a detailed description of the facts which support the misconduct charge. The food steward directly observed the event and had nothing to gain or lose based on the outcome of this hearing. Moreover, the misconduct was witnessed by Officer Bendt.
>
> Prisoner was informed of the decision, including sanction and dates, prior to leaving the hearing room.

(docket # 16, ID# 155). The hearing officer sentenced plaintiff to seven days loss of privileges. (*Id.*). On October 1, 2009, Classification Director Beecher removed plaintiff from the food service job assignment. (docket # 13-7, ID# 119). On October 5, 2009, plaintiff filed a request for rehearing on his major misconduct conviction. The request for rehearing was denied on November 10, 2009. (docket # 1-2, ID# 19). There is no evidence that plaintiff pursued any further appeal of his major misconduct conviction.[3] Plaintiff's major misconduct conviction has never been overturned.

On May 27, 2010, plaintiff filed this lawsuit.

---

[3]*See* MICH. COMP. LAWS 791.255; *see also LaFountain v. Harry*, 1:10-cv-943, 2011 WL 976461, at * 7 (W.D. Mich. Mar. 16, 2011).

**Discussion**

1.      **Mootness**

Plaintiff is an inmate at the Ryan Correctional Facility (RRF).   (docket # 33).

Defendants are employed by the State of Michigan at Carson City Correctional Facility (DRF).

Plaintiff's claims for injunctive and declaratory relief against defendants are moot.  *See Colvin v.*

*Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

2.      **Eleventh Amendment Immunity**

Plaintiff's claims for damages against defendants in their official capacities are barred

by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court against a

state and its departments or agencies unless the state has waived its sovereign immunity or

unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

100 (1984). The State of Michigan has not consented to civil rights suits in federal court.  *See*

*Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in  her official

capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't*

*of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008).

Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.

*See Will*, 491 U.S. at 71.

3.      **First Amendment**

Plaintiff alleges that defendants Burgtorf and Bradley retaliated against him in

violation of his First Amendment rights.  On summary judgment, a plaintiff asserting a First

Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

### A.    Food Service Leader Amy Bradley

Plaintiff alleges that defendant Bradley violated his First Amendment rights when she filed a major misconduct charge against him for violating a direct order. "The first element [plaintiff] must establish for his retaliation claim[s] [is] that he was engaged in conduct protected by the First Amendment." *Hill v. Lippin*, 630 F.3d 468, 472 (6th Cir. 2010). Plaintiff alleges that he engaged in protected conduct when he responded to Bradley's direct order with a statement "express[ing] his intent to file a grievance against Bradley for her insolent behavior toward the plaintiff."[4] (Compl., docket # 1, ID # 8). A prisoner retains only those First Amendment rights that

---

[4]The Sixth Circuit has not yet found it necessary to resolve the question of whether a prisoner's speech must address a matter of public concern for it to constitute protected speech. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) ("[W]hether the public-concern test determines the protection afforded a prisoner's speech is an open question in the Sixth Circuit."). Public employees are required to satisfy the "public concern" test of *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). *See, e.g.*, *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 767–68 (6th Cir. 2010). The Supreme Court's recent decision in *Snyder v. Phleps*, 131 S. Ct. 1207, 1215–16 (2011), emphasizes the importance of the public concern component, and makes it more likely that the "public concern" requirement is a foundational element for protected prisoner speech. It would be extraordinary if convicted felons possessed greater free speech protections than public employees. If the public concern test applies, it is fatal to plaintiff's claims,

are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the

corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see Heard v. Caruso*, 351 F. App'x

1, 7 (6th Cir. 2009) ("The Supreme Court has explained that although 'incarceration does not divest

prisoners of all constitutional protections' the 'constitutional rights that prisoners possess are more

limited in scope than the constitutional rights held by individuals in society at large.'") (quoting

*Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001)).   Plaintiff was not engaged in protected conduct

when he responded to Bradley's direct order with a threat.   The Sixth Circuit has never recognized

a threat by a prisoner to file a grievance as a protected conduct in response to a direct order.[5]   Direct

orders from prison employees are not subject to debate by prisoners, nor critiques regarding the word

choices made to forcefully express the expectation of the prisoner's immediate compliance.   *See*

*Jennings v. Peiffer*, 110 F. App'x 643, 646 (6th Cir. 2004)("Inmates cannot be permitted to decide

which orders they will obey, and when they will obey them.").   The only appropriate response by a

prisoner to a direct order is compliance.

      Plaintiff's act of filing a written grievance stands on more substantial legal footing.

A prisoner's filing of a grievance can constitute protected conduct.   *See Herron v. Harrison*, 203

F.3d 410, 415 (6th Cir. 2000); *see also Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007).   The

---

because his expression of disagreement with Bradley's order was made on his own behalf, not on
any issue of public concern.

    [5]In the unpublished decision of *Pasley v. Conerly*, 345 F. App'x 981, 984-85 (6th Cir. 2009),
a Sixth Circuit panel found that Pasley's "statement that he would file a grievance against Conerly
if she did not help him obtain footlockers might constitute conduct protected by the First
Amendment." Assuming *arguendo* that a threat by a prisoner against a prison employee could
somehow constitute protected conduct, it has *never* been recognized as such in a response to a direct
order.

Sixth Circuit recognizes the filing of a non-frivolous grievance[6] as conduct protected by the First

Amendment.  *See Herron v. Harrison*, 203 F.3d at 415.  Written grievances generally do not pose

a threat to the security and good order of the prison.[7]  I will assume for present analytical purposes

that plaintiff's grievance accusing his work supervisor of "insolence" in her delivery of the order was

not frivolous.[8]

The second element of a retaliation claim is an adverse action against plaintiff that

would deter a person of ordinary firmness from engaging in the protected conduct. The Sixth Circuit

has determined that a major misconduct charge could deter a person of ordinary firmness.  *See*

*Thomas v. Eby*, 481 F.3d at 441.

Plaintiff's retaliation claim based on the grievance he filed against Bradley fails on

the third element:  causation.  "The third element of a First Amendment retaliation claim requires

---

[6]Frivolous grievances are not protected conduct.  *See Hill v. Lappin*, 630 F.3d at 472; *Lockett v. Suardini*, 526 F.3d at 874 (calling a hearing officer a "foul and corrupted bitch" was not protected conduct).

[7]"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  "To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).
A written grievance filed in the manner specified by the MDOC's rules provides defined parameters for a prisoner's claim.  The Supreme Court has repeatedly cautioned lower federal courts not to entangle themselves in the day-to-day operations of state prisons.  *See McKune v. Lile*, 536 U.S. 24, 37 (2002); *Shaw v. Murphy*, 532 U.S. at 228-29; *Turner v. Safley*, 482 U.S. 78, 89 (1987). If prisoners can manufacture First Amendment claims by responding to direct orders with verbal threats to file grievances, prisoners will have significant incentives to delay or refuse compliance with routine orders, and there will be no meaningful limitation on federal court interference with the State's day-to-day operation of its prisons.

[8]Plaintiff's claim of verbal harassment is not a claim of constitutional dimension.  This claim was dismissed on initial screening.  (7/1/10 Op. at 6-7, ID#s 41-42) (collecting cases).

the plaintiff to prove a causal connection between the protected conduct and the adverse action. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted). Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant. Specifically, plaintiff must point to specific, nonconclusory allegations reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken." *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim."). The grievance plaintiff filed on August 18, 2009, could not have been a motivating factor for the major misconduct charge defendant Bradley filed against him five days earlier. Plaintiff has not presented evidence sufficient to support a causal connection between his grievance and defendant's action of filing the major misconduct charge of which plaintiff stands convicted.

"Even if the plaintiff establishes all three elements, the defendant may avoid liability by showing 'that the same action would have been taken in the absence of protected activity.'" *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 399). Defendant Bradley has shown that she would have taken the same action if plaintiff had not filed his grievance. I find that defendant Bradley is entitled to judgment in her favor as a matter of law on plaintiff's First Amendment retaliation claim.

### B. Food Service Leader Burgtorf

Plaintiff alleges that defendant Burgtorf violated his First Amendment rights by filing a false work evaluation report in retaliation for plaintiff's grievance against defendant Bradley. (Compl., docket # 1, ID# 8). On the present record, no reasonable trier of fact could find in plaintiff's favor on the causation component of his First Amendment claim, and defendant Burgtorf has established that he would have given plaintiff a poor work performance review in the absence of any protected conduct.

On August 5, 2009, Burgtorf gave plaintiff the poor work performance evaluation.[9] There is no evidence that plaintiff engaged in protected conduct on or before August 5, 2009. There is no evidence supporting plaintiff's belief that Burgtorf drafted his evaluation on August 14, 2009, then backdated it to August 5, 2009. Burgtorf's action of giving plaintiff a poor performance review

---

[9] Plaintiff did not have a constitutionally protected interest in prison employment. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"). Loss of a prison job is not a significant and atypical hardship in relation to the ordinary incidents of prison life. *See Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011); *Williams v. Wilkinson*, 51 F. App'x 553, 556-57 (6th Cir. 2002).

on August 5, 2009, could not have been motivated by the grievance plaintiff filed almost two weeks later. (docket # 22-1, ID# 201). Plaintiff received his poor job performance review because he had earned it long before he filed his grievance. I find that defendant Burgtorf is entitled to judgment in his favor as a matter of law on plaintiff's retaliation claim.

> **4.  Due Process**

Plaintiff alleges that Investigator VanCourt violated his rights under the Fourteenth Amendment's Due Process Clause by conducting a deficient investigation of the major misconduct charge.[10]  Plaintiff is an inmate subject to Michigan's disciplinary credits system. A prisoner's loss of disciplinary credits does not implicate a protected liberty interest.[11]  *See Nali v. Ekman*, 355 F. App'x at 912; *Langford v. McKee*, 2011 WL 2728397, at * 5; *accord Thomas v. Eby*, 481 F.3d at 439-40. Absent a liberty interest protected by the Fourteenth Amendment's Due Process Clause, federal courts have no basis for reviewing the adequacy of state prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *see also Schulick v. Mich. Dep't of Corr.*, No. 2:11-cv-73, 2011 WL 4706979, at * 12 (W.D. Mich. Oct. 5, 2011). I find that defendant VanCourt is entitled to judgment in his favor as a matter of law.

---

[10]There is no due process requirement that a hearings investigator conduct his investigation in any particular way. See *Poole v. Michigan Reformatory*, No. 1:10-cv-378, 2010 WL 2992382, at * 8 (W.D. Mich July 26, 2010); *Hill v. McKee*, No. 1:10-cv-470, 2010 WL 2735691, at * 4 (W.D. Mich. July 9, 2010); *Falkiewicz v. Grayson*, 271 F. Supp.2d 942, 948 (E.D. Mich. 2003).

[11]If plaintiff had enjoyed a protected liberty interest in good time credits and lost them as a result of his major misconduct conviction, he would have first been required to appeal his major misconduct conviction and been successful in having it overturned before he could assert a section 1983 claim necessarily implying the invalidity of his conviction. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

**Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's claims for injunctive

and declaratory relief be dismissed as moot, and that his claims for damages against defendants in

their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment

immunity. I further recommend that defendants' motion for summary judgment (docket # 12) be

granted, and that judgment be entered in defendants' favor on all plaintiff's claims for damages

against defendants in their individual capacities.


Dated:   December 16, 2011          /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days
of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and
responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and
specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474
U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752
(2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not
suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-
97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).